**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA For the Use and Benefit of GILLETTE AIR CONDITIONING COMPANY, INC., <br><br>   *Plaintiff*, <br><br> v. <br><br> SATTERFIELD AND PONTIKES CONSTRUCTION, INC. and CONTINENTAL CASUALTY COMPANY, <br><br>   Defendants, | § § § § § § § § § § § § § § § §    Civil Action No.  SA-10-CV-778XR |

**ORDER**

On this date, the Court considered Defendants Satterfield & Pontikes Construction's and Continental Casualty Company's Motion to Compel Arbitration (docket no. 6), and the Response and Reply thereto.

**I. Background**

Plaintiff's First Amended Complaint, which is the live pleading, asserts claims for "negligence and other acts [or] omissions of Satterfield and Pontikes Construction, Inc. and Continental Casualty Company relating to Plaintiff's labor and materials furnished to Satterfield and Pontikes for heating, ventilation, air conditioning and plumbing work on 'Building 2791 - Renovation – Fort Sam Houston Training Barracks Upgrade.'" The Amended Complaint alleges that Satterfield contracted with the United States to perform "design and construction of repairs, reconstruction, or renovation" to Building 2791.  In January 2008, Gillette and Satterfield entered

into a subcontract under which Gillette would perform HVAC and plumbing work. Gillette alleges that it performed the work and provided materials in conformance with the contract, in addition to extra, specially-directed work caused by errors on the part of Satterfield. Plaintiff Gillette alleges that Satterfield breached the contract by, among other things, furnishing defective plans and specifications, and failing to pay for labor and materials. Count I is a breach-of-contract claim against Satterfield. Count II is a quantum meruit claim against Satterfield. Count III is a Miller Act claim against Continental Casualty on the payment bond. And Count IV is a negligence claim against Satterfield.

Defendants have answered and moved to compel arbitration of all claims pursuant to the contract between Gillette and Satterfield. The contract provides:

> (b) In the event any controversy or dispute arises between Subcontractor [Gillette] and Contractor [Satterfield] relating to this Subcontract (or a breach thereof), which dispute or controversy does not involve the correlative rights and duties of Owner, Subcontractor shall request mediation of the dispute with Contractor and the parties shall attempt in good faith to mediate the dispute. Mediation of the dispute shall be a condition precedent to any further rights that the Subcontractor has to the resolution of this dispute.
>
>> (i) If mediation is unsuccessful, then Subcontractor agrees that Contractor shall make the determination (in its sole discretion) as to whether the dispute shall be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules (then applicable) of the American Arbitration Association (in which Subcontractor agrees that it will submit its disputes to such arbitration and that such arbitration will be binding to the full extent enforceable under applicable arbitration statutes including the Federal Arbitration Act). Any arbitration held under this provision shall be held in Harris County, Texas.
>>
>> (ii) In the event that Contractor determines that the dispute shall not be resolved through arbitration, then Subcontractor agrees that the dispute will be resolved by courts of competent jurisdiction in Harris County, Texas.

Contract, Art. 12(b). The contract also provides that "[t]his Subcontract shall be governed by the laws of the State of Texas . . . ." Contract, Art. 9(m).

Defendants contend that this dispute is subject to the arbitration agreement, and move the Court to stay this lawsuit pending resolution of the arbitration.[1] Gillette has responded to the motion to compel arbitration by arguing that the arbitration clause is illusory and therefore unenforceable because it gives Satterfield the sole discretion to determine whether the dispute should be settled by arbitration. Defendants reply that "[n]o state or federal appellate court in Texas has held a unilateral arbitration election clause is unenforceable" and also distinguish the case upon which Gillette relies.

## II. Analysis

Courts perform a two-step inquiry to determine whether to compel a party to arbitrate: first, we determine whether the parties agreed to arbitrate and, second, whether a federal statute or policy renders the claims nonarbitrable. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The courts divide the first step into two more questions: whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement. *Id*.

Gillette does not dispute that there is an agreement to arbitrate here or that it covers the current dispute. Rather, it contends only that the arbitration clause is illusory and thus unenforceable. That issue is governed by Texas law. *See Carter v. Countrywide Credit Industries,*

---

[1] Defendants also state in their Answer that "Plaintiff failed to perform all conditions precedent that it was required to perform prior to filing suit. First, Plaintiff failed to submit this dispute to mediation as required by the subcontract. Second, Plaintiff failed to submit this dispute to arbitration as required by the subcontract." Answer at ¶ 31. Though it appears undisputed that Plaintiff has not requested mediation, neither party addresses this issue. However, questions concerning whether the procedural prerequisites to arbitration have been satisfied are generally for the arbitrator to decide, unless "no rational mind" could question that the parties intended for a procedural provision to preclude arbitration and that it had not been complied with. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964). In this case, it is unclear whether the parties intended that Plaintiff's failure to submit the claim to mediation would preclude Defendants' right to move to compel arbitration, and thus the exception does not apply.

*Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) ("In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts.").

Gillette relies on *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), for the proposition that if one party retains the right to "unilaterally abolish or modify" the arbitration agreement, then it is illusory and not binding. In *Webster*, the Texas Supreme Court considered "whether an arbitration agreement between an employer and an employee is enforceable if the employer reserves the unilateral right to modify or terminate personnel policies without notice." *Id.* at 225. The plaintiff employee sued for wrongful termination, and the employer moved to compel arbitration. The plaintiff resisted arbitration, arguing that the arbitration clause was unenforceable because it was illusory, unconscionable, and lacked mutuality. *Id.* at 227. The Court noted that arbitration agreements are interpreted under traditional contract principles and that an employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements. *Id.* at 228. In *Webster*, the parties "mutually agree[d] and contract[ed]" to submit disputes to arbitration, but the contract also stated that the employer "reserve[d] the right to unilaterally abolish or modify any personnel policy without prior notice." The Court found that the last sentence was ambiguous, because it was not clear what was included in the term "personnel policy," and thus did not decide whether the agreement to arbitrate was unenforceable. In a footnote, however, it stated that "most courts that have considered this issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory." *Id.* at 230 n.2. The Court has also noted in a more recent decision that a promise to arbitrate is illusory if it fails to bind the promisor. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

Defendants contend that this case is distinguishable from *Webster* and the cases its cites in

4

footnote 2 because in *Webster* the parties mutually agreed to submit all disputes to arbitration, but possibly (depending on the construction of the contract language) allowed the employer to unilaterally abolish or modify the arbitration agreement, whereas in this case, the parties mutually agreed that Satterfield could elect whether to arbitrate or litigate claims at the time of the dispute. Thus, Defendants contend, "the agreement does not mandate arbitration, while at the same time carving out an exception for [Satterfield] to abolish or modify the agreement," but "[i]nstead, the agreement simply allows [Satterfield], the general contractor responsible for dozens of subcontractors, including Plaintiff, to determine whether arbitration is appropriate given the facts and circumstances of the dispute, at the time the dispute arises." Reply at 3-4.

Defendants further contend that the relevant authorities hold that mutuality of obligation is not required in arbitration agreements, so long as the underlying contract is supported by consideration, and that most courts have rejected the argument offered by Plaintiff. Defendants point to the Texas Supreme Court's decision in *In re First Merit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001), in which the contract generally required arbitration of all disputes, but allowed the lender to elect to litigate certain disputes. The Texas Supreme Court noted that "[m]ost federal courts" have held that "an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration." *Id.* at 757. Because the contract allowed the lender to seek judicial relief for "claims essentially protecting the bank's security interest," when considered in light of "the weight of federal precedent and the routine nature of mobile home financing agreements," the Court held that the arbitration agreement was not unconscionable. *Id.* at 757-58.

Among the cases cited by the Texas Supreme Court in *First Merit Bank* was *Harris v. Green*

*Tree Financial Corp.*, 183 F.3d 173, 183 (3d Cir. 1999), in which the Third Circuit held that "the mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable." *Id.* at 183. It concluded that the "substantive federal law stands for the proposition that parties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate." *Id.* at 180.

The Texas Supreme Court also cited *Wilson Electric Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167 (6th Cir. 1989), which involved a dispute between a subcontractor and contractor and an arbitration clause providing that "[e]xcept as otherwise specifically provided for in this Subcontract, any controversy or claim arising out of or relating to this Subcontract, or the breach thereof which is not disposed of by agreement, shall, at the election of Contractor [Minnotte], be settled by arbitration." The Sixth Circuit held:

> It is undisputed that [Subcontractor] freely signed the contract, which contained an arbitration clause allowing Minnotte alone to elect to arbitrate any controversy or claim arising out of or relating to the contract or the breach thereof. Wilson made no claim of fraud or that it was coerced into signing the contract or that the contract was unconscionable. Because the contract as a whole did not lack consideration, we see no grounds justifying the district court's decision [to deny the motion to compel arbitration], which appears to be pervaded by "the old judicial hostility to arbitration" . . . .

*Id.* at 169.

The Court agrees with Defendants that the facts here are unlike those in *Webster* – Satterfield did not promise to arbitrate but then retain a unilateral right to avoid the arbitration. Thus, Satterfield did not make an illusory promise to arbitrate. *See In re 24R, Inc.*, ___ S.W.3d ___, ___ (Tex. Oct. 22, 2010) ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether."). Rather, the parties expressly

6

"agree[d] that [Satterfield] shall make the determination (in its sole discretion) as to whether the dispute shall be settled by binding arbitration" or through litigation.

Given the express contractual language, the situation here is more akin to that in *First Merit Bank*, where the plaintiff complained the arbitration agreement was substantively unconscionable because it bound the plaintiff to arbitrate with the manufacturer but did not bind the manufacturer to arbitrate all claims with the plaintiff. Gillette has not argued that the arbitration agreement here is unconscionable, only that it is illusory. Even considering the issue of unconscionability, however, the Texas Supreme Court did not find the unequal arbitration clause in *First Merit Bank* to be unenforceable, and has subsequently re-affirmed the principle that "arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) ("when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause").[2] Plaintiff makes no challenge to the underlying contract as lacking consideration, and offers no argument or evidence to support its position other than the fact that the

---

[2] The Texas Supreme Court does not appear to have considered an arbitration clause exactly like the one at issue here, but its positive citation to and reliance on *Green Tree* and *Wilson Electric* indicate that it would not find the clause here unconscionable, absent a showing that "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *First Merit Bank*, 52 S.W.3d at 757 (stating the general test for unconscionability). The Fifth Circuit also has not decided the issue of "one-sided" arbitration clauses as a matter of Texas law, but has found that Louisiana courts regard one-sided arbitration clauses as unconscionable. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cri. 2004). The Fifth Circuit noted that "courts in other jurisdictions have reached varying decisions when faced with unconscionability challenges to one-sided arbitration clauses." *Id.* at 169 n.11. It has also noted, however, that Texas is "less hostile" to the enforcement of arbitration agreements than other states, and that "[i]n Texas, there is nothing per se unconscionable about arbitration agreements; indeed, parties claiming unconscionability bear the burden of demonstrating it." *Carter*, 362 F.3d at 301 n.5. In this case, Gillette has not argued or presented any evidence to satisfy its burden of demonstrating unconscionability.

7

contract permits Satterfield to unilaterally decide whether to arbitrate.  Accordingly, Plaintiff fails to carry its burden to demonstrate that the arbitration clause is unenforceable as claimed.

### III. Conclusion

The Court finds that the parties agreed to arbitrate, that the current disputes are within the scope of the arbitration clause, that Plaintiff has failed to establish that the clause is unenforceable, and that no federal statute or policy renders the claims nonarbitrable.  Accordingly, the Court GRANTS the motion to compel arbitration (docket no. 6).  This litigation is STAYED.  Because all proceedings in this case are stayed pending resolution of the arbitration, this case is appropriate for administrative closure.  *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending).  The effect of an administrative closure is no different from a simple stay ....").

The Clerk's office is DIRECTED to administratively close this case pending further order of the Court.  Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request of any party or on the Court's own motion.  *Mire*, 389 F.3d at 167. Defendants shall file a status report every sixty days, beginning March 1, 2011.

SIGNED this 7th day of December, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE